## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | |
|---|---|
| DEVON CAMPBELL,<br>7110 Munford Mill,<br>Baltimore, Maryland 21244<br><br>        Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS<br>MANAGEMENT, LLC<br>*Serve:* The Corporation Trust Incorporated<br>        2405 York Road<br>        Suite 201<br>        Lutherville Timonium, MD 21093- 2264<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)      **Case No**:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Devon Campbell (hereinafter, "Plaintiff"), by and through counsel, Deyka W. Spencer, Esq. and the Spencer Firm, LLC, and files this Complaint against Comcast Cable Communications Management, LLC (hereinafter, "Defendant" or "Comcast") for unlawful employment practices on the basis of national origin (Jamaican) in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000 *et seq*. ("Title VII") and on the basis of age (50) in violation of the Age Discrimination in Employment Act of 1967 29 U.S.C. § 621 *et seq.* ("ADEA").

## JURISDICTION AND VENUE

1.        This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. This action is also authorized pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-f(f)(1).

2.     Venue for this action is appropriate under 28 U.S.C. § 1391(b)(2) as the unlawful employment practices alleged were committed within the jurisdiction of the United States District Court for the District of Maryland.

3.     All conditions required prior to the filing of this lawsuit have been performed, as the Equal Employment Opportunity Commission (EEOC) reviewed the charge of discrimination filed by Plaintiff and found cause to open a formal investigation. The EEOC subsequently issued Plaintiff a right to sue letter on June 25, 2021.

<u>**PARTIES**</u>

4.     Plaintiff Devon Campbell is a resident of Baltimore, Maryland. At all times relative to his claims, Plaintiff was an employee of Defendant.

5.     Defendant, upon information and belief, is a Delaware corporation with its principal office located at 1701 John F. Kennedy Boulevard, Philadelphia, PA, 19103-2838. Since August 20, 2010, Defendant has been actively registered to conduct business in Maryland. At all times relevant to this claim, Defendant was registered and doing business within the State of Maryland.

<u>**FACTUAL ALLEGATIONS**</u>

6.     Plaintiff is a fifty (50) -year-old male, born of Jamaican descent, and was employed by Defendant as a Residential Salesperson from December of 2007 to April 6, 2017.

7.     Throughout his employment, Plaintiff's work performance and contribution to the success of Comcast were exemplary. Plaintiff distinguished himself from his peers by regularly meeting his sales goals, and periodically setting new sales records, including exceeding his own sales records.

8.     In 2012, Comcast assigned Plaintiff's position to a new team manager, Mr. Ryan Souder ("Mr. Souder"), a Caucasian male in his thirties (30s) and supervisor, Mr. Bryan Fitzsimmons ("Mr. Fitzsimmons"), another Caucasian male.

9.     Under his new management team, Plaintiff was continuously harassed and discriminated against, despite his requests to be transferred to another team.

Comcast's Discriminatory Treatment

10.      Defendant's agent, Mr. Souder regularly incorrectly reported Plaintiff's bi-weekly sales statistics in open team meetings; reducing his accomplishments. Since such inaccurate reporting had the potential to affect Plaintiff's earnings, Plaintiff would email Mr. Souder to request that the records be updated with Plaintiff's accurate number of sales.

11.      Defendant's agents, Mr. Souder and Mr. Fitzsimmons excluded Plaintiff from Comcast marketing events, made discriminatory statements towards Plaintiff and regularly obstructed and harmed Plaintiff's work performance. Plaintiff was treated differently from others despite outperforming his peers.

12.      In May or June of 2015, Mike Parrish a former Comcast sales representative overheard Mr. Fitzsimmons say, "as long as Devon is on my team he will never get as much 'events' if any".

13.      By Mr. Fitzsimmons not allowing Plaintiff to work at events, Plaintiff's work performance was hindered. Plaintiff was limited to being in the field and knocking on doors to make his sales goals, instead of attending sales events like his peers.

14.      Plaintiff was denied rewards and prizes earned for sale performances throughout his employment at Comcast. Defendant did not withhold rewards from Plaintiff's non-Jamaican coworkers.

15.      In May 2016, Plaintiff was one of several employees to win Beyoncé concert tickets for top sales performance. A week before the scheduled concert (June 10, 2016), Plaintiff was informed that the other winners had received their tickets. However, Plaintiff never received his tickets.

16.      When Plaintiff asked about his tickets, Mr. Fitzsimmons replied, "I am not catering to you and a woman to go to no concert".

17.      Because Plaintiff knew that neither Mr. Fitzsimmons nor Mr. Souder were going to acknowledge his successful performance, Plaintiff reached out to Senior Sales Director, Mr. Sean Lennon. Mr. Lennon told Plaintiff's management team to give Plaintiff a visa gift card. Plaintiff did not receive the gift card until August 2016, after sending numerous emails requesting it.

18.     In addition to the above incident, Mr. Fitzsimmons denied Plaintiff other gift card awards for his top sales performance. Mr. Fitzsimmons would invite other top performers to pick up their cards, but never invited Plaintiff despite Plaintiff's requests. As a result, Plaintiff stopped requesting the awards that were due to him.

19.     Plaintiff would often request customer assistance from Mr. Souder and would not get a response from him for two or three days, so Plaintiff would have to find alternative help from other workers such as Wendy Perkins.

20.     For instance, in August of 2016, Mr. Souder completely ignored Plaintiff's request for help in giving a customer extra account credit due to a Comcast error. It wasn't until Plaintiff escalated his request to Mr. Souder's supervisor in an email, that Mr. Souder sent a text message to Plaintiff stating that his request was completed.

21.     In July 2016, Plaintiff called Mr. Fitzsimmons on a Saturday, which was the sales representatives' designated day to work, and requested assistance with getting a customer's account lifted. Mr. Fitzsimmons not only refused to help Plaintiff by stating that Plaintiff was bothering him, Mr. Fitzsimmons also hung up on Plaintiff and then sent an email alleging that Plaintiff hung up on him.

22.     Upon Mr. Fitzsimmons' email submission, Plaintiff spoke with Senior Sales Director, Mr. Sean Lennon about the incident. Mr. Lennon assured Plaintiff that he knew Plaintiff would never hang up on Mr. Fitzsimmons, but to apologize to him anyway.

23.     On various occasions Mr. Souder failed to correctly input Plaintiff's vacation time or requested days off. Doing so typically resulted in a delay in Plaintiff receiving his proper pay.

24.     Over the course of Plaintiff's employment at Comcast, there were several comments made by other employees related to his Jamaican nationality that Plaintiff believes was discriminatory.

25.     For example, when Plaintiff reported his sales to management, he was told that Anthony Rush, in Comcast management, made the comment: "it's not even 12:00 yet and this crazy Jamaican already got 5 'Triple Plays'".

26.     Mr. Souder and Ms. Kelly, another Comcast management member (all management at the time were Caucasian) were overheard talking about how people from the Islands just come "here to make money and send it back to their families" and how it is difficult to understand them (referring to people from Jamaica) because they are from the Islands.

27.     Mr. Souder and Mr. Fitzsimmons both have been known to make discriminatory statements towards minorities at the workplace.

28.     During team meetings, Mr. Souder would, unprompted, make statements suggesting that Mr. Campbell needed to send the money he earned back home to his family in Jamaica; wholly inappropriate for team meetings, false, and highly stereotypical.

<u>Comcast's Wrongful Termination of Mr. Campbell</u>

29.     Mr. Souder knowingly allowed other American workers to process sales without initially having the customer's signatures. Making sales over the phone was a standard practice at Comcast during Plaintiff's employment for which other employees were never punished or reprimanded.

30.     However, in January 2017, Plaintiff was wrongfully accused of falsifying a sale for the same practice as other comparators- processing a sale without initially having the customer's signature.

31.     In the sale that led to Plaintiff's wrongful termination, Plaintiff obtained consent by phone from the customer. The customer was not home at the time of his door-to-door sale, but her cousin was present. The cousin called the customer/owner to assist in getting confirmation of the sale. At that point, Plaintiff like all other sales representatives began the sales process. However, the customer became upset when the equipment was not delivered on time and wanted to cancel the sale. Plaintiff notified Mr. Souder of the customer's cancellation, but Mr. Souder chose to allow the sale to be processed.

32.     On March 31, 2017, Mr. Souder and Mr. Fitzsimmons told Plaintiff that he was suspended pending an investigation relating to the previously mentioned sale.

33.     During his termination, Mr. Fitzsimmons told Plaintiff that "this is something that could have a 50-year-old up in the club looking for another woman" referring to the Plaintiff and his wife hypothetically divorcing him because of his impending termination.

34.     Plaintiff was terminated on April 6, 2017 for a widespread practice without having the opportunity to explain or defend his position.

35.     Subsequent to Plaintiff's termination, Plaintiff's manager, Ryan Souder, and some members of his team, were committing fraud by altering customer social security numbers to generate false sales in an effort to increase his commission; this was discovered, and Mr. Souder is no longer employed with Comcast.

36.     Despite learning of Mr. Souder's compromised integrity, after already being informed by Plaintiff, Comcast has yet to reach out to Plaintiff to correct the injustice that he suffered while employed with Defendant.

37.     The confirmation of Mr. Souder's character did not serve the Plaintiff in being redeemed; instead, the incidents were swept under a rug.

38.     In addition to his termination, Plaintiff was also denied earned wages by Defendant. On Mr. Campbell's Earning Statement (pay date April 14, 2017), Defendant deducted $3,994.00 as "Transition Commission" Post-Tax Deduction; something that is not done to other workers. The reason and context behind this deduction are unclear and appear to be an arbitrary withholding of Mr. Campbell's earned commissions.

39.      Plaintiff has exhausted his administrative remedies with respect to his claims herein, by timely filing a complaint of discrimination with the Equal Employment Opportunity Commission (EEOC), receiving a "Right to Sue" letter on June 25, 2021, and timely filing this lawsuit.

## COUNT 1: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (ADEA)

40.     Plaintiff re-alleges and incorporates by reference the allegations contained in preceding paragraphs 1-37 of this Complaint.

41.     Plaintiff vehemently believes that Defendant's decision to discharge him was

partially based on Plaintiff's age and national origin.

42.        Plaintiff is a 50-year-old man, thus a member of the protected class.

43.        Plaintiff was terminated from his job and, thus, suffered an adverse employment action.

44.        At the time of the adverse employment action, Plaintiff was performing his job duties satisfactorily. Even more so, Plaintiff was a top performer.

45.        Defendant's unlawful and discriminatory conduct in violation of the ADEA was willful and malicious, was intended to injure Plaintiff, and was done with conscious disregard for Plaintiff's civil rights, entitling Plaintiff to an award of back pay for lost time from employment, compensatory damages, and punitive damages.

## COUNT II: NATIONALITY DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

46.        Plaintiff re-alleges and incorporates by reference the allegations contained in preceding paragraphs 1-44 of this Complaint.

47.        Plaintiff is a man of Jamaican descent, making him a member of a protected class.

48.        Plaintiff was terminated from his employment at Comcast, and thus he suffered an adverse employment action.

49.        At the time of Plaintiff's termination, he was performing his job duties satisfactorily and exceeding his employer's expectations; he was a top performer.

50.        Defendant subjected Plaintiff to disparate working conditions and a hostile work environment through its non-Jamaican, male, Caucasian supervisors who regularly talked down on minorities and treated Plaintiff unfairly in comparison to all others similarly situated to him (Plaintiff was the only Jamaican employee at the job site in question during the time that included unfair and disparate treatment as described in this claim.

51.        Defendant's continuous mistreatment of Plaintiff by withholding rewards/prizes for his performance while Plaintiff's coworkers enjoyed recognition; by making unwelcomed comments about his national origin and age; by punishing him in a harsh manner for an

action that they do not punish other younger and American workers- sufficiently gives an inference of discrimination.

52.      Plaintiff was treated disparately than other employees. Plaintiff was terminated for a standard company practice while no other employees were not punished or terminated for the same actions.

53.      As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and pain and suffering for which he is entitled to an award of monetary damages and other relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Devon Campbell prays that the Court enter judgment in his favor and against Defendant Comcast Cable Communications Management LLC, containing the following relief:

A.  A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the laws of the United States;

B.  An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.  An award of compensatory damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

D.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

E.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G. An award of punitive damages;

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Respectfully Submitted,

_____/s/_____
Deyka Williams Spencer, Esq.
The Spencer Firm, LLC
Bar Number: 979180
2275 Research Boulevard, Suite 500
Rockville, Maryland 20850
PH: (301) 637-2866
FX: (866) 686-2126

*Attorney for Plaintiff*