IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEVON CAMPBELL                          *

                                        *

v.                                      *   Civil Action No. CCB-21-2000

                                        *

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC
                                        *

******
**MEMORANDUM**

Pending before the court in this employment discrimination case is a motion to compel arbitration and dismiss for improper venue brought by defendant Comcast Cable Communications Management, LLC (ECF 6). The motion has been fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Comcast's motion will be granted.

**BACKGROUND**

I.      Campbell's Employment History with Comcast

This case arises from an employment dispute between plaintiff Devon Campbell and Comcast Cable Communications Management, LLC ("Comcast"), a Delaware corporation with its principal office located in Philadelphia, Pennsylvania. The alleged facts are taken from the complaint. (ECF 1). Mr. Campbell, a fifty-year-old male born of Jamaican descent, was employed by Comcast as a Residential Salesperson from December 2007 to April 6, 2017 (ECF 1 ¶ 6). In 2012, Comcast assigned Mr. Campbell's position to team manager Mr. Ryan Souder ("Mr. Souder"), a Caucasian male in his thirties, and supervisor, Mr. Bryan Fitzsimmons ("Mr. Fitzsimmons"), another Caucasian male. (*Id.* ¶ 8) While working under Mr. Souder and Mr.

Fitzsimmons, Mr. Campbell alleges that he was "continuously harassed and discriminated against, despite his requests to be transferred to another team." (*Id.* ¶ 9). Specifically, Mr. Campbell alleges that Mr. Souder and Mr. Fitzsimmons regularly and incorrectly reported Mr. Campbell's bi-weekly sales statistics in open team meetings, excluded Mr. Campbell from Comcast marketing events, obstructed and harmed his work performance, treated Mr. Campbell differently from others, and employees made discriminatory statements towards Mr. Campbell. (*Id.* ¶ 10-13). On one occasion Mr. Fitzsimmons was overheard saying, "as long as Devon (Mr. Campbell) is on my team he will never get as much 'events' if any." (*Id.* ¶ 12).

Mr. Campbell also alleges that he was denied rewards and prizes that he earned for his sales performance. (*See* ECF 1 ¶ 14), and that Mr. Souder was slow to respond to, or completely ignored, his requests for customer assistance (*Id.* ¶ 19-20). Mr. Campbell additionally asserts that Mr. Souder incorrectly input his vacation time and his requested days off, which typically resulted in a delay in receiving proper pay. (*See* ECF 1 ¶ 23).

In April 2017 Mr. Campbell was terminated by Comcast for processing a sale without initially having the customer's signature. (*Id.* ¶ 30). Mr. Campbell maintains that he obtained consent by phone from the customer and that making sales over the phone was a standard practice at Comcast during Plaintiff's employment for which other employees were never punished or reprimanded. (*Id.* ¶ 29, 31). Mr. Campbell also asserts that the customer ultimately wanted to cancel the sale, but when Mr. Campbell notified Mr. Souder of the customer's desire, Mr. Souder instead allowed the sale to be processed. (*Id.* ¶ 31). After termination, Comcast deducted $3,994.00 as reflected on Mr. Campbell's Earning Statement as "Transition Commission" which Mr. Campbell maintains is "something that is not done to other workers." (*Id.* ¶ 38). Believing he was subjected to age and national origin discrimination, Mr. Campbell

filed a charge with the EEOC and received a right to sue letter on June 25, 2021. This lawsuit followed.

II.   The Arbitration Policy

On August 6, 2021, Devon Campbell ("Mr. Campbell") filed a complaint in this court alleging unlawful employment practices, including wrongful termination, on the basis of national origin and age, against Comcast. (ECF 1). Comcast filed a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C.A §§ 1-16, and to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), on November 5, 2021. (ECF 6). Comcast alleges that Mr. Campbell "agreed to participate in—and be bound by—the Company's dispute-resolution program, called 'Comcast Solutions,' which includes a mandatory arbitration agreement," covering the statutory discrimination claims Mr. Campbell raises. (*Id*. at 1). Comcast asserts that they mailed a letter containing information about Comcast Solutions to Mr. Campbell on September 23, 2013. (*Id*. at 3). "The accompanying letter explained to Mr. Campbell that he would be automatically enrolled in Comcast Solutions, unless he did not want to participate, in which case he needed to complete and return to Comcast an 'opt-out' form by November 1, 2013." (*Id*.). According to Comcast, Mr. Campbell did not return an opt-out form by November 1, and subsequently electronically acknowledged his ongoing participation in Comcast Solutions in 2014, 2015, 2016 and 2017. (*Id*. at 4).

Mr. Campbell filed a response in opposition to Comcast's motion, (ECF 7), and Comcast then filed a reply. (ECF 8).

**STANDARD OF REVIEW**

I.   FAA

Comcast pursues judicial enforcement of the arbitration agreement cited in the Comcast Solutions Program under the FAA. The FAA reflects "a liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Under § 2 of the Federal Arbitration Act ("FAA"), an arbitration contract is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 546 (D. Md. 2019). As such, "the FAA elevates the arbitration of claims as a favored alternative to litigation when the parties agree in writing to arbitration." *Id.*

In *Adkins v. Labor Ready, Inc.*, the Fourth Circuit held that "a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.'" *Adkins*, 303 F.3d at 500–01 (4th Cir. 2002).

The *Adkins* opinion further provided that "A district court ... has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* at 500. Consequently, a court must "engage in a limited review" to conclude that the parties have entered into a valid agreement and that the substantive scope of the agreement covers the specific dispute. *Stone*, 361 F. Supp. 3d at 547 (citing *Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002)).

Under Section 3 of the FAA, federal courts are directed, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," to stay proceedings "until such arbitration has been had." 9 U.S.C.A §3. "Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).

II.     Motion to Dismiss for Improper Venue

An agreement to arbitrate is a specialized kind of forum-selection clause that posits the procedure to be used in resolving the dispute. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). The Fourth Circuit has held that motions to dismiss based upon forum-selection clauses are cognizable as motions to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 n.9 (4th Cir. 2012). Therefore, the motion to compel arbitration before the court may be properly treated as a motion to dismiss for improper venue under Rule 12(b)(3).

When a Rule 12(b)(3) challenged is raised, the plaintiff bears the burden of demonstrating that the venue is appropriate. *Stone* 361 F. Supp. 3d at 549 (citing *Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), overruled on other grounds by *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 102 (1982).). If no evidentiary hearing is held, "the plaintiff need only make a prima facie showing that venue is proper." *Stone*, 361 F. Supp. 3d at 549 (citing *CareFirst, Inc. v. Taylor*, 235 F.Supp.3d 724, 732 (D. Md. 2017)). To determine whether there has been a prima facie showing, the court will consider evidence outside the pleadings (namely, the Comcast Solutions

5

Agreement and exhibits submitted by the defense (Exhibits A-I)) and view the facts in the light most favorable to the plaintiff. *See Stone*, 361 F. Supp. 3d at 549.

## ANALYSIS

I. Valid agreement to arbitrate

In deciding a motion to dismiss in favor of arbitration, courts first "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *See Stone*, 361 F. Supp. 3d at 547 (quoting *Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002)).

Mr. Campbell contends there was no agreement that bound him to arbitration because he never received notification of the agreement and never agreed to waive his rights. (ECF 7 at 2-3). Therefore, the court will decide whether the evidence demonstrates notification of the arbitration agreement on the part of Comcast, and acceptance of the agreement on the part of Mr. Campbell, thus evidencing the existence of a valid agreement to arbitrate between the parties.

"Generally, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (internal quotation marks and citation omitted). Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[T]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration," under Maryland law. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective*

*Ins. Co.*, 392 F.3d 114, 123 (4th Cir. 2004)). Mr. Campbell argues that the first requirement, offer and acceptance, was not met. (ECF 7 at 2-3).

### A. Offer

The Fourth Circuit has recognized that "a presumption of delivery and receipt of mail arises when material is properly mailed." *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1234 (4th Cir. 1996). Evidence of ordinary business practices is sufficient to show that material has been properly mailed. *Id.* Testimony by the addressee that he did not receive, or does not remember receiving, the material is not conclusive. *Id* at 1235. The Fourth Circuit has set forth guidance for the trier of fact to consider all other evidence offered in the case to determine whether the item was mailed and received. *Id.*

On the one hand, the plaintiff argues that he "never received the notification" and that "the defendant is not able to confirm that [he] received the [opt-out] provision of the arbitration agreement." (ECF 7 at 3). On the other hand, Comcast has submitted a declaration by Lynn Collins, Labor & Employee Relations Vice President at Comcast, who has "personal knowledge of various aspects of Comcast Solutions" and describes in detail the process by which Comcast Solutions was introduced to Comcast employees in the Beltway region, including Mr. Campbell, via mail. (ECF No.6-2). Ms. Collins attaches to her declaration several documents including the letter (Ex. C), brochure (Ex. B), and envelope (Ex. D) that was sent and addressed to Mr. Campbell's home address.

Ms. Campbell notes that in September of 2013 Comcast mailed a letter containing information about Comcast Solutions, and the opt out process, to Mr. Campbell's then-current home address, which was also the only mailing address on file for Mr. Campbell in 2013. (ECF 6-2, ¶ 8).

7

Specially, the letter stated in pertinent part:

- If you decide you would like to participate in the program, you don't have to do anything. You will be automatically enrolled. (Exhibit C).
- If you prefer not to participate in the program, all you need to do is complete an "Opt Out" form, available on the Comcast Solutions page on TeamComcast, and *return it no later than November 1, 2013* either by email addressed to ComcastSolutions@cable.comcast.com, OR by regular mail to Comcast Solutions Administrator, c/o Comcast, 1701 JFK Blvd., 34th Floor, Philadelphia, PA 19103. (Exhibit C).

Enclosed with the letter was a Comcast Solutions brochure, which also explained the opt out process in language similar to that of the letter. (Exhibit B). Ms. Collins affirms that this brochure was generated as part of the regular practice of Comcast. (ECF 6-2 ¶ 5,8).

Through the declaration provided by Ms. Collins as well as the documents attached to her declaration, Comcast has submitted sufficient evidence establishing that it properly mailed Mr. Campbell the Comcast Solution Materials. Comcast presented proof that it ordinarily and properly mailed Mr. Campbell the letter and brochure by presenting a copy of the envelope addressed to Mr. Campbell at his home address. (Exs. B, C). Furthermore, Comcast has submitted sufficient evidence establishing that both the letter and brochure clearly and explicitly state that Mr. Campbell would automatically be enrolled in Comcast Solutions unless he completed and returned an opt-out form to Comcast by November 1, 2013.

In her declaration, Ms. Collins also explains and provides evidence that on October 3, 2013, she sent a follow-up email to Mr. Campbell's Comcast email address. (ECF 6-2 ¶ 10, Ex. E). This email was sent to all Beltway region employees and included an electronic link to the Comcast Solutions program brochure and reiterated the opt out process as well as the November 1, 2013, deadline. *Id.*

Mr. Campbell and his lawyer fail to offer any sufficient evidence, including a declaration or affidavit in support of his contention, denying receipt of the mailing and notification of the opt out provision. Moreover, Mr. Campbell does not deny receiving the follow-up email sent by Ms. Collins, and thus concedes receipt.

After a review of the evidence, the court determines that Mr. Campbell has failed to rebut the presumption of delivery and receipt of mail containing the Comcast Solutions Program created by Comcast's evidence. As such there was a valid offer by Comcast.

B. Acceptance and meeting of the minds

Under general principles of contract law, "acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Farmer v. Macy's, Inc.*, 2019 WL 5079763, at *4 (D. Md. Oct. 10, 2019) (quoting Restatement (Second) of Contracts § 50). "An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Hercules, Inc. v. United States,* 516 U.S. 417, 424 (1996) (quoting *Baltimore & Ohio R. Co. v. United States,* 261 U.S 592, 597 (1923)).

Mr. Campbell argues that he did not accept terms of the arbitration provision because to manifest an acceptance there must be a meeting of the minds, and no such meeting of the minds occurred here. (ECF 7 at 3). This argument fails for several reasons.

Firstly, Ms. Collins, Labor & Employee Relations Vice President at Comcast, has shown, through her declaration and through the substantial evidence provided, that Mr. Campbell along with all Beltway region Comcast employees were notified in September and October of 2013 of

their automatic enrollment in and acceptance of the Comcast Solutions Program unless an opt-out form was completed and submitted by November 1, 2013. (ECF 6-2). Yet, Mr. Campbell does not provide any evidence, through affidavit or otherwise, that he completed and submitted an opt-out form by the required deadline, nor does Mr. Campbell establish an "unequivocal denial that [the] arbitration agreement exists" by providing sufficient evidence in support of his assertion. *Taccino v. Ford Motor Co.*, 2019 WL 1429263, at *5 (D. Md. Mar. 29, 2019) (citing *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)); See also *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 350 & n.11 (D. Md. 2015) (finding no genuine dispute of material fact concerning arbitrability where plaintiff "passingly asserts" that she did not recall receiving or executing documents in question that necessarily bound her to the arbitration agreement in question).

Secondly, in the four consecutive years following the original September 2013 mailing and October 2013 follow-up email, Mr. Campbell continued to electronically certify and agree to the Comcast Solutions terms by electronically selecting "I Acknowledge" on the annual employee acknowledgment form of Comcast's Code of Conduct and Employee Handbook.[1]

---

[1] Maryland has adopted the Uniform Electronic Transactions Act. Md. Code Ann., Com. Law § 21-101 to -120 (LexisNexis 2013) which provides that an "electronic signature is attributable to a person if it was the act of the person," and that "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the ... electronic signature was attributable." Md. Code Ann., Com. Law § 21-108(a); *See Farmer*, 2019 WL 5079763 at *5. Ms. Collins, through her declaration, establishes that to access the online acknowledgement forms, employees use their secure company account, which a unique username and password is required to access. (ECF 6-2, ¶ 15). According to Ms. Collins, Comcast records indicate that "someone logged into Mr. Campbell's secure company account using his username and password and clicked on the 'I Acknowledge' button. *Id.* The forms also display Mr. Campbell's first name, middle initial, and last name. (Exhibit F, G, H, I).

10

Lastly, in support of his argument, Mr. Campbell asserts that there is no evidence of his signature acknowledging receipt of the opt-out provision and that he "did not sign" the agreement binding him to arbitration. But, Mr. Campbell's signature was not necessary to opt into the Comcast Solutions program or acknowledge receipt of the opt-out provision, as Comcast had on multiple documents and occasions explicitly stated the method by which an employee accepted arbitration through Comcast Solutions. Thus Mr. Campbell's signature was not necessary to constitute an effective acceptance or acknowledgement of the agreement.

Given that Mr. Campbell has not provided an affidavit, a declaration, or any other admissible evidence that would establish he did not receive notice or would affirm submission of the opt out form, and given that Mr. Campbell acknowledged and agreed to Comcast Solutions throughout his continued employment with the company, the court finds Mr. Campbell accepted and was bound to the terms of the arbitration agreement.

II.     The failure, neglect, or refusal of the defendant to arbitrate the dispute

Having concluded that Mr. Campbell received and agreed to be bound to the Comcast Solutions arbitration agreement, the court now turns to the plaintiff's argument that Comcast waived its right to compel arbitration because it did not invoke arbitration during the EEOC administrative process or at any point before Mr. Campbell brought suit.

A party may waive its right to demand arbitration if the party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir 1985)). But even where the party invoking arbitration has utilized the litigation machinery to some degree, "[t]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*."

11

*MicroStrategy*, 268 F.3d at 249 (quoting *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir.1987) (emphasis added).). Delay and the extent of the trial-oriented activity by the party invoking arbitration, without more, will not suffice to establish waiver of arbitration. although these factors are material in "assessing a plea of prejudice." *Id.*

In *MicroStrategy*, where the plaintiff signed an employment contract containing an arbitration clause, the Fourth Circuit found that the defendant did not waive its right to arbitration despite filing three separate civil actions against the plaintiff, in both federal and Virginia courts, before invoking arbitration. *Id.* By comparison, Comcast sought to compel arbitration promptly after Mr. Campbell initiated this suit on August 6, 2021. (ECF 6). Furthermore, the filing of its motion to compel arbitration and to dismiss has been Comcast's only trial-oriented activity, where in *MicroStrategy* the party opposing arbitration was subject to far more trial-oriented activity before arbitration was invoked. Accordingly, under Fourth Circuit precedent, Mr. Campbell has not met his burden of showing Comcast waived its right to arbitration by participating in litigation.

With respect to Mr. Campbell's contention that Comcast's failure to invoke arbitration during the administrative process waived its ability to require arbitration, courts have found that participation in administrative proceedings before the EEOC, by the party seeking arbitration, is not considered litigation for the purposes of determining waiver. *See Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015); *Gravagna v. Terminix Int'l, Inc.*, 2008 WL 2765336 *1 (S.D.N.Y. July 9, 2008)). Additionally, the Comcast Solutions Program expressly permits participating employees to pursue administrative redress with agencies like the EEOC. (Ex. A.). Specifically, the Program represents that covered employees must submit the covered claim to individual arbitration, should the matter be unresolved by state, local, or federal

12

agencies. *Id.* Thus, the Comcast Solutions program makes clear that Comcast could not have invoked arbitration to preclude the filing of claims with such agencies. The court therefore finds that Comcast did not waive its ability to compel arbitration and that Mr. Campbell did not suffer any prejudice that would result in a waiver.

Finally, while staying judicial proceedings and dismissal are both appropriate remedies where a motion to compel arbitration is granted, the plaintiff does not object to a dismissal nor argue to stay proceedings. Furthermore, the defendant does not seek a dismissal on the merits. Because there has been no request for a stay of court proceedings under § 3, and because all the issues presented in this lawsuit are arbitrable, the court will dismiss the case without prejudice.

## CONCLUSION

For the reasons stated above, the court will grant Comcast's motion to compel arbitration and dismiss the case without prejudice. A separate order follows.

Sept. 13, 2022
Date

/CCB/
Catherine C. Blake
United States District Judge